### CARSON *v.* STATE.

[No. 26,130.   Filed July 29, 1932.   Rehearing denied December 15, 1932.]

*Miller & Uhlir* and *James H. Chatterly,* for appellant.

*James M. Ogden,* Attorney-General, and *Robert L. Bailey,* Special Assistant Attorney-General, for the State.

MARTIN, J.—Appellant was found guilty by a jury, sentenced to imprisonment for thirty days, and fined $100 under an indictment which charged that she (in violation of §4, ch. 48, Acts 1925, §2717 Burns 1926) :

> "did . . . unlawfully sell, barter, exchange, give away, furnish and otherwise handle and dispose of intoxicating liquor to Charles W. Aldridge, said intoxicating liquor then and there being fluid extract of ginger, commonly known as Jamaica ginger, and that the said fluid extract contained more than ½ of 1% of alcohol by volume to wit: 85% of alcohol by volume, and that the said liquor was sold and intended to be used as a beverage, which facts were then and there well known by the said Maud Carson."

The prosecuting witness, Aldridge, testified that he bought from one to four bottles of "Jake" or fluid extract of ginger each day from March 1 to 15, from the

accused at her grocery store, around which he loafed. This liquid he drank after diluting it with water and it resulted in his limbs becoming paralyzed. Other witnesses testified that they, likewise, had bought from the accused, diluted and drank tincture of ginger and as a result thereof had become poisoned and crippled.

Under proper assignments of error appellant contends that the indictment "does not contain allegations sufficient to charge an offense" under §§4 and 2, ch. 48, Acts 1925, §§2717 and 2715 Burns 1926, and that the verdict is not sustained by sufficient evidence, in that there was no evidence that the liquid sold by appellant to Aldridge was sold for beverage purposes or was reasonably likely or intended to be used as a beverage.

As has been repeatedly pointed out §2717 Burns 1926 includes three separate classifications in its definition of intoxicating liquor. *Berstein* v. *State* (1928), 199 Ind. 704, 707, 160 N. E. 296; *Ver Wilst* v. *State* (1928), 200 Ind. 30, 35, 161 N. E. 249; *Chandise* v. *State* (1929), 200 Ind. 493, 495, 163 N. E. 266. One of these is: "every other drink mixture or preparation of like alcoholic content (as much as ½ of 1% of alcohol by volume) whether patented or not, reasonably likely or intended to be used as a beverage." In a prosecution for an offense involving an alcoholic liquid within this definition it is necessary to allege and prove that the liquid contained more than ½ of 1% of alcohol by volume, and that it was sold and intended to be used as a beverage. The proof must show that it was reasonably likely and intended to be used as a beverage,—i. e. that it was reasonably probable that the purchaser intended to use it for beverage purposes. *Hedges* v. *State, supra; Bernstein* v. *State, supra; Ellwanger* v. *State* (1932), 203 Ind. 307, 180 N. E. 287. If this liquid can be used as a medicine its sale and use for that purpose is as lawful as the sale of any other

drug which contains a like amount of alcohol, but its sale for beverage purposes is as unlawful as the sale of any intoxicating liquor containing a like amount of alcohol. *Bernstein* v. *State, supra,* at p. 708; *Hedges* v. *State, supra.*

The allegations and proof in this case are sufficient to sustain the verdict and judgment against the appellant. From the facts in evidence the jury was, in our opinion, justified in concluding that the seller reasonably knew that the liquid sold was to be used by the purchaser as a beverage. There is no evidence in the record that the liquid was used or was intended to be used for any purpose other than beverage purposes. The fact that the liquid was so strong that it was diluted with water before it was used as a beverage does not, as appellant contends, take it without the operation of the law. *Hall* v. *State* (1928), 200 Ind. 149, 153-154, 162 N. E. 51.

After appellant was arraigned and had pleaded "not guilty" she was permitted to withdraw her plea and file a motion to quash the indictment. The record does not show that she again entered a plea after the court overruled her motion to quash. Appellant, citing cases which were decided prior to the enactment of §9, ch. 132, Acts 1927, §2232 Burns 1929 Supp., contends that the judgment must be reversed because of the failure to arraign her and receive her plea.

The section of the statute just referred to provides that:

"any conviction shall not be invalidated by failure of the record to show an arraignment and plea or either of them, unless the record shall show that the defendant before the trial objected to entering upon the trial for lack of such arraignment or plea."

Appellant seeks to avoid the effect of this statute (1) by the argument that "such an attempt on the part of the legislature (requiring the accused to object before

entering upon trial) would be requiring of anyone accused to perform the functions and duties of a court," and (2) by the statement that the attorney who represented appellant withdrew his appearance and that at the time the trial commenced she was without an attorney.

We see no merit in the argument that this statute requires an accused to perform a judicial function. Its requirement—that a defendant must object to going to trial without arraignment or plea before he can invalidate the conviction because the record fails to show an arraignment or/and plea—seems to us a reasonable one. The record shows that the county attorney was appointed by the court to defend the appellant before the trial began.

Judgment affirmed.